# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERCEPT PHARMACEUTICALS, INC., et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>APOTEX INC., et al.,<br><br>　　　　　Defendants. | C.A. No. 20-1105-MN-JLH<br>(CONSOLIDATED)<br><br>REDACTED - PUBLIC VERSION |

**LETTER TO THE HONORABLE JENNIFER L. HALL FROM ANNE SHEA GAZA
IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE
TO AMEND THEIR ANSWERS AND COUNTERCLAIMS**

Neal C. Belgam (No. 2721)
Eve H. Ormerod (No. 5369)
SMITH, KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 1501
Wilmington, DE  19801
(302) 652-8400
nbelgam@skjlaw.com
eormerod@skjlaw.com

*Attorneys for Defendants Apotex Inc. and Apotex Corp.*

Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Defendants Amneal EU, Limited, Amneal Pharmaceuticals of New York, LLC, MSN Laboratories Private Limited, and MSN Pharmaceuticals Inc.*

John C. Phillips, Jr. (No. 110)
Megan C. Haney (No. 5016)
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE  19806-4204
(302) 655-4200
jcp@pmhdelaw.com
mch@pmhdelaw.com

*Attorneys for Defendants Lupin Limited and Lupin Pharmaceuticals, Inc.*

R Touhey Myer (No. 5939)
OFFIT KURMAN, P.A.
222 Delaware Avenue, Suite 1105
Wilmington, DE  19801
(302) 351-0900
touhey.myer@offitkurman.com

*Attorneys for Defendants Optimus Pharma Pvt. Ltd. and Optimus Drugs Private Ltd.*

Dated: August 24, 2022

Redacted: August 31, 2022

Dear Judge Hall:

Defendants request leave to amend their Answers and Counterclaims to allege patent unenforceability due to inequitable conduct.[1] *See* proposed order. New discovery has revealed that during the prosecution of all but one of the patents-in-suit[2]—U.S. Patent Nos. 9,238,673, 10,173,073, and 10,047,117 ("the purity patents") and 10,052,337, 10,751,349, and 10,758,549 ("the particle size patents")—Plaintiffs filed false declarations, withheld data showing that prior-art processes anticipated the claims, and even withheld prior art that they knew to be anticipatory. After learning this evidence, Defendants worked quickly and diligently to prepare amended pleadings and confer with Plaintiffs. Defendants' Amended Answers and Counterclaims state a claim for inequitable conduct, and good cause exists for Defendants' amendments.

### I. Plaintiffs engaged in inequitable conduct to obtain purity and particle size patents.

Defendants' amended pleadings detail the basis for Defendants' inequitable conduct defense, showing that the patent applicant "(1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO." *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1344 (Fed. Cir. 2013) (citations omitted). To plead inequitable conduct with "the requisite particularity under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material representation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009) (internal quotations/citations omitted). Defendants have satisfied these requirements.

The patents-in-suit each relate to obeticholic acid ("OCA"), the active ingredient used in Plaintiffs' drug product, OCALIVA®. The purity patents generally relate to amorphous or "Form 1" OCA that contains less than 1% of an impurity, chenodeoxycholic acid ("CDCA"). The particle size patents generally relate to pharmaceutical compositions comprising OCA below specified particle sizes, including 50% of the particles having a diameter less than 200 microns.



---

[1] A copy of Defendants' Answers and Counterclaims are attached as Exhibits A1-A5. Redline comparisons to Defendants' prior pleadings are attached as Exhibits B1-B5. The new allegations contained in each proposed amended pleading are identical, thus Exhibit A1 (containing all accompanying exhibits) and B1 are representative of the proposed amendments for all Defendants.

[2] Plaintiffs assert seven patents against one or more Defendants in this case. One of these patents covers the OCA compound, which is not asserted against Amneal.

▮▮▮

Plaintiffs' conduct during prosecution, and their representations to the PTO, starkly contradict the information available to them. *See id.* at ¶¶ 70-73. After the examiner rejected the pending claims of the '673 patent—the parent of the purity patents—for obviousness over Ferrari '977 in combination with chromatography to obtain less than 1% CDCA, Dr. Rewolinski (one of the inventors) filed a declaration in disagreement. *Id.* at ¶¶ 38-44. Dr. Rewolinski claimed "[t]he "synthetic method in Ferrari ['977] could not produce obeticholic acid that comprises less than 1% of CDCA," and that the similarity of CDCA to OCA made it "impractical" to achieve this impurity level "using a chromatographic purification method." *Id.* at ¶¶ 43-44 (quoting Rewolinski Declaration). ▮▮▮ When Plaintiffs later sought the particle size patents, they did not disclose Ferrari '977 as a pertinent reference at all. *Id.* at ¶ 239. ▮▮▮ Consistent with their misrepresentations, Plaintiffs did not provide the PTO with any of their internal data, or explain the known characteristics of the prior art. *See, e.g., id.* at ¶¶ 55, 207, 209.

The only reasonable inference from Plaintiffs' conduct is that they intended to deceive the PTO in order to obtain the purity and particle size patents. *See id.* at ¶¶ 46, 210, 242-244. Indeed, but for Plaintiffs' material misrepresentations and withholding of material information, the purity and particle size patents would not have issued. *See id.*

## II. Good cause exists for Defendants' amendments.

"The Third Circuit has adopted a liberal policy favoring the amendment of pleadings to ensure that claims are decided on the merits rather than on technicalities." *ICU Med., Inc. v. RyMed Techs., Inc.*, 674 F. Supp. 2d 574, 577 (D. Del. 2009). Because the deadline for amending pleadings has passed, the good cause standard of Rule 16(b) applies. *See Eastern Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000). Under Rule 16(b), good cause "hinges on the diligence of the movant, and not on prejudice to the non-moving party" and "requires the movant to demonstrate that, despite diligence, the proposed claims could not have been reasonably sought in a timely manner." *Venetec Int'l v. Nexus Med.*, 541 F. Supp. 2d 612, 618 (D. Del. 2010).

Here, good cause exists because Defendants diligently collected evidence of the inequitable conduct throughout fact discovery and only recently obtained critical information pertaining to their claims, including depositions of key inventor witnesses between July 13 and July 27, 2022.[3]

---

[3] Plaintiffs produced 90+% of their document production the week before the deadline for substantial completion of document production on March 23, 2022. Defendants diligently reviewed the production, containing over 148,000 documents, and on May 13, 2022, sent Plaintiffs

Defendants further disclosed their inequitable conduct defense to Plaintiffs ██████████████████████████, and sought Plaintiffs' consent to file the amended pleadings within days of Dr. Lancaster's deposition. *See* Ex. C at 2.

Given the nature of Defendants' allegations, and the fact that much of the critical evidence was not in Defendants' possession earlier (*see* n. 3), Defendants could not have amended their pleadings prior to the close of fact discovery. "[C]ourts in this district have regularly held that it is not unreasonable for patent challengers to postpone raising allegations of inequitable conduct until sufficient discovery has been conducted to enable the challenger [to] confirm its suspicions and gather the evidence necessary to sustain its claim." *Lipocine Inc. v. Clarus Therapeutics, Inc.*, No. 19-622-WCB, 2020 WL 4794576, at *3 (D. Del. Aug. 18, 2020). This is especially true given "the high standards of pleading and proof for inequitable conduct claims." *Id.*

Further, Defendants contacted the Court to move for leave to amend just 15 days after Dr. Lancaster's July 27, 2022 deposition. *See* D.I. 214. Courts in this district have found no undue delay where a party waited more than a month to file a motion for leave to amend after a relevant deposition. *See, e.g., Evonik Degussa GmbH v. Materia Inc.*, C.A. No. 09-636, 2011 WL 13152274, at *3 (D. Del. Dec. 13, 2011) (delay of slightly more than two months after the critical depositions not undue); *Enzo Life Scis., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 489 (D. Del. 2003) (delay of six weeks after important deposition not "undue"); *Roquette Freres v. SPI Pharma, Inc.*, C.A. No. 06-540, 2009 WL 1444835, at *5 (D. Del. May 21, 2009) (delay of six weeks after important depositions not "undue").

Finally, Defendants' proposed amendments are not futile; they are well supported and could render 6 of the 7 patents-in-suit unenforceable (*supra* § I). Plaintiffs cannot claim prejudice at least because they have long possessed the information forming the basis of Defendants' inequitable conduct claims, Defendants detailed their new allegations ████████████████ ████████ on July 7, 2022, and Defendants disclosed their proposed amended pleadings on August 5, 2022. *See* Ex. C at 1. Defendants further are not asking for additional discovery relating to their new claims, nor would the addition of these claims delay the current schedule. Rather, Defendants intend to wrap these issues into their opening expert reports.

Defendants therefore respectfully request the Court grant leave to amend and permit Defendants to file the proposed amended Answers, attached as Exhibits A1-A5.

---

a letter detailing significant deficiencies. *See* Ex. D. For example, Plaintiffs' production was missing information relating to the synthesis of early OCA batches ████████████ ████████████████████ and data on those batches. *Id.* On the same day, in an abundance of caution, Defendants served additional discovery requests. *See* Ex. E (requests for production), F (interrogatories). Following Defendants' deficiency letter, Plaintiffs produced additional documents on May 23, 2022 and June 6, 2022. Exs. G, H. On June 13, 2022, Plaintiffs responded to Defendants' additional interrogatories identifying documents relating to early batches of OCA, including how those batches were synthesized and data on the batches. Ex. I. The parties are still conferring regarding outstanding discovery disputes. Ex. J.

3

Respectfully,

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)

Enclosures (Proposed order; Exs. A1-A5; B1-B5; and C-J (highlighting added to C-J))

cc: All Counsel of Record (via E-mail)