IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERCEPT PHARMACEUTICALS, INC. and INTERCEPT PHARMA EUROPE LTD., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. 20-1105 (MN) (CONSOLIDATED) |
| APOTEX INC. and APOTEX CORP., | ) ) | **PUBLIC VERSION** |
| Defendants. | ) ) | |

**RESPONSE LETTER TO THE HONORABLE JENNIFER L. HALL FROM JEREMY A. TIGAN IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO AMEND THEIR ANSWERS AND COUNTERCLAIMS**

OF COUNSEL:

Christopher Sipes
Jeffrey Elikan
Megan Keane
Eric R. Sonnenschein
Priscilla Dodson
Douglas A. Behrens
Alexander R. Trzeciak
Daniel J. Farnoly
Laura M. Martin
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-6000

Mary Swears
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1219

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Plaintiffs*

**Confidential Version Filed: August 29, 2022**
**Public Version Filed: September 6, 2022**

Dear Judge Hall:

The Court should deny Defendants' request to amend their pleadings. Defendants seek to introduce a host of wholly new issues—asserting fraud in the prosecution of two separate patent families—in the midst of expert discovery, and just six months before trial. Defendants' request is untimely and Defendants lack good cause to amend because Defendants have not been diligent. The deadline for amending pleadings was September 10, 2021, and the facts underlying all of Defendants' new allegations have been in their possession for more than five months. Additionally, though Defendants attempt to downplay the disruption this will cause by eschewing discovery on their part, Intercept will be burdened by having to develop new fact and expert testimony to defend against these unfounded accusations. That would substantially prejudice Intercept's ability to prepare for trial. Courts have recognized that the introduction of inequitable conduct at such a late stage is inherently prejudicial to plaintiffs, for precisely this reason. *See, e.g.*, *Asahi Glass Co. v. Guardian Indus. Corp.*, 276 F.R.D. 417, 420 (D. Del. 2011). Finally, Defendants' request should be denied because the proposed claims would be futile.

**1. <u>Defendants' Motion Should Be Denied Under Rule 16</u>.** The deadline to amend pleadings was September 10, 2021, more than eleven months ago. D.I. 26, ¶ 2. Defendants thus must satisfy Rule 16 and demonstrate good cause. *Truinject Corp. v. Galderma, S.A.*, 2021 WL 4355570, at *2 (D. Del. Sept. 24, 2021). Good cause "hinges on diligence of the movant," *id.* (quoting *Genentech, Inc. v. Amgen Inc.*, 2020 WL 708113, at *1 (D. Del. Feb 12, 2020)), and does not exist where, as here, the movant "was aware of the facts that would lead it to amend and failed to act on [them]." *GlaxoSmithKline LLC v. Glenmark Pharms. Inc.*, 2016 WL 7319670, at *1 (D. Del. Dec. 15, 2016).

Here, Defendants seek to add inequitable conduct claims related to allegedly false or withheld information regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. D.I. 220, 1. Defendants rely on prosecution histories and Intercept documents that were timely produced by March 23, 2022. D.I. 220, Ex. A-1.[1] ***Defendants' purported evidence has been in their possession for at least five months***, well before the close of fact discovery. Defendants' almost half-year delay warrants denial. *Lipocine Inc. v. Clarus Therapeutics, Inc.*, 2020 WL 4794576, at *4 (D. Del. Aug. 18, 2020) (finding undue delay when the motion to amend to allege inequitable conduct is filed three months or more after the defendant obtained critical information).

Defendants assert that they could not have amended their pleadings before depositions of two "key" inventors (i.e., Drs. Rewolinski and Lancaster), which allegedly revealed ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ and that Intercept was aware of this information. D.I. 220, 2–3. But this is only pretext. Defendants repeatedly cite deposition testimony merely for confirming or agreeing to what the documents say. *See e.g.*, *id.*, Ex. A-1, ¶¶ 76, 77, 82, 84, 85, 87, 88, 90, 91. Delaying claims of inequitable conduct for depositions that simply "confirm" the allegations does not

---

[1] Although Defendants reference small productions made after the deadline, *see* D.I. 220, n.3, Defendants' proposed amended pleadings do not cite any such documents. Nor did Defendants rely on Intercept's supplemental discovery responses—Defendants' proposed amended pleadings cite just three pages identified in response to Defendants' supplemental interrogatory requests (two of which have been in Defendants' possession since March 10, 2022).

constitute good cause. Ex. A, Order at 1, *U.S. v. Gilead Scis., Inc.*, No. 19-2103, (D. Del. Mar. 30, 2022), D.I. 307 (A movant cannot wait to file a claim because "future depositions will nevertheless help it to 'confirm' the truth of those allegations."); *see also Chemours Co. FC, LLC v. Daikin Indus., Ltd.*, 2022 WL 855518, at *2–3 (D. Del. Mar. 23, 2022). Indeed, Defendants' claim that depositions were "critical" is belied by the fact that Defendants had formulated their arguments at least by July 7, 2022 when they included them in their final invalidity contentions—notably citing many of the same documents *before* the "key" depositions (yet still more than 3.5 months *after* Intercept's document productions). See D.I. 220, 2. Defendants' suggestion that they needed depositions is further belied by their decision not to depose any counsel actually involved with prosecution of the patents, despite accusing them *en masse* of committing fraud (*see, e.g.*, *id.*, Ex. A-1, ¶¶ 210, 242), or even to question the purportedly "key" inventors regarding whether they understood the materiality of the allegedly withheld information or knew it had not been submitted. For example, despite alleging that the Ferrari '977 reference was withheld during prosecution of the particle size patents, Defendants did not question Dr. Lancaster about Ferrari '977 at all, much less his awareness of it or whether it had been submitted to the Patent Office. Defendants' reliance on the belated depositions of two inventors does not justify their delay in seeking to add their new claims. *See* Ex. B, Mem. Op. & Order at 12, *Eagle View Techs., Inc. v. Xactware Sols., Inc.*, No. 15-7025 (D.N.J. May 31, 2018), D.I. 432 ("Parties must accept the risk and consequences if they save key depositions for after the deadline to amend pleadings passes.").

**2. <u>Defendants' Motion Should Be Denied Under Rule 15</u>.** In the alternative, the Court should deny Defendants' motion under Rule 15. Under Rule 15, a party may amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave should be denied where, as here, equitable factors weigh against amendment, including because the movant's delay is prejudicial to the opposing party or the amendment would be futile. *See, e.g.*, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**Adding New Claims Would Significantly Prejudice Intercept.** Defendants' amended pleadings would significantly expand the scope of the case, which Defendants acknowledge. D.I. 220, 3. In particular, Defendants make a number of allegations about prosecution of the patents that Intercept will now need to investigate with additional experts, and potentially additional witnesses, who Plaintiffs may need to testify at trial on these issues. Moreover, Defendants accuse unnamed "prosecution counsel" of engaging in the alleged fraud, thereby expanding the scope of their allegations to several outside law firms and multiple patent agents and attorneys that are third parties to this action. This expansion would occur in the midst of expert discovery, just six months before trial, in a case that has already been pending for two years. Defendants' agreement not to take additional depositions or seek additional fact discovery does not alleviate the prejudice. Intercept would be required to shift resources away from addressing the infringement of five separate proposed generic products and Defendants' invalidity arguments to investigating new arguments at the same time that Intercept is engaged in expert discovery and preparing for trial. Injecting new claims into a case at this juncture is inherently prejudicial. *Asahi Glass*, 276 F.R.D. at 420.

**Defendants' Motion Would Be Futile.** An amended pleading is futile if it "does not state a claim upon which relief can be granted." *SRI Int'l Inc., v. Internet Sec. Sys., Inc.*, 817 F. Supp. 2d 418, 423 (D. Del. 2011). Under Fed. R. Civ. P. 9(b), inequitable conduct claims require allegations of fact sufficient to infer that "a specific individual (1) knew of the withheld material

information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328–29 (Fed. Cir. 2009). Here, Defendants' allegations are futile.

First, as to Defendants' allegation that Intercept, its prosecution counsel, or other unidentified inventors engaged in inequitable conduct, Defendants fail to identify any specific individual with the requisite knowledge and intent. *Id.* at 1328; *Invista N. Am. S.à.r.l. v. M&G USA Corp.*, 2013 WL 12304544, at *14 (D. Del. May 3, 2013), *adopted* No. 11-cv-1007 (D. Del. May 30, 2013), D.I. 350 (motion to add inequitable conduct was futile where movant failed to identify "specific individual"). Such allegations are legally inadequate at the start of a case; they are clearly improper and prejudicial here, after the deadline for amendment and the close of fact discovery.

Second, regarding Defendants' allegation that Dr. Lancaster withheld ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ during prosecution of the particle size patents, *see* D.I. 220, Ex. A-1, ¶¶ 238, 240, Defendants cite no evidence suggesting that he was aware of it, much less that he deliberately withheld it, *see id.*, ¶¶ 238, 240 (citing only Dr. Rewolinski). *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). Nor do Defendants show ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was material. *E.g.*, *Sanofi-Synthelabo v. Apotex Inc.*, 492 F. Supp. 2d 353, 394–95 (S.D.N.Y. 2007), *aff'd*, 550 F.3d 1075 (Fed. Cir. 2008) (non-public test data was "not part of the prior art" and "was not material"). To the extent Defendants further allege that Dr. Lancaster intended to withhold the Ferrari '977 reference, *see* D.I. 220, Ex. A-1, ¶ 242, Defendants again fail to produce any evidence of his awareness or deliberate intent to withhold it. *See Therasense*, 649 F.3d at 1290. Defendants' failure to adduce evidence that Dr. Lancaster knew of the withheld information and deliberately withheld it is fatal to their claim. *See 1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1375–76 (Fed. Cir. 2012) (reversing judgment of inequitable conduct where defendant adduced no evidence the inventor deliberately withheld allegedly material information from PTO).

Third, Defendants' allegations that Dr. Rewolinski committed fraud in connection with the purity patents by declaring that the Ferrari '977 process did not produce "highly pure obeticholic acid" with less than 1% CDCA (an impurity) and that it would be "impractical" to separate CDCA D.I. 220, Ex. 4, ¶¶ 5, 8, are similarly defective, as Defendants fail to cite any evidence either that those statements are untrue or that Dr. Rewolinski knew them to be untrue. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. But, as Defendants admit, this is not the case. Dr. Rewolinski testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In addition, despite asserting that Dr. Rewolinski improperly declared it would be "impractical" to use chromatography to separate CDCA, Defendants fail to allege any facts showing that such a purification would, to the contrary, not only be a practical way of making highly pure obeticholic acid, but that Dr. Rewolinski so believed. Defendants' own proposed amended pleadings refute this: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Defendants lack evidence both that the purportedly fraudulent statements were false and that they were known to be false and deliberately made with the intent to deceive.

                        Respectfully,

                        */s/ Jeremy A. Tigan*

                        Jeremy A. Tigan (#5239)

JAT:lo
Attachments
cc:    Clerk of the Court (via hand delivery)
       All Counsel of Record (via electronic mail)