# EXHIBIT A

ORAL ORDER: The Court, having reviewed Defendants' Motion for Leave to Amend Affirmative Defenses (the "Motion"), (D.I. 295 ), and the briefing related thereto, (D.I. 296; D.I. 298; D.I. 299), as well as having heard argument on the Motion during a teleconference held on March 28, 2022, hereby ORDERS that the Motion is DENIED. With their Motion, Defendants are seeking to amend their Fifth Affirmative Defense regarding inequitable conduct; the Motion was brought more than seven months after the expiration of the Scheduling Orders July 16, 2021 deadline for amendment of pleadings. (D.I. 27 at para. 2) The Court concludes that Defendants have not demonstrated good cause to alter the Scheduling Order to allow for this very late amendment, in light of Defendants' lack of diligence in failing to amend the inequitable conduct allegations earlier in the case. The Court comes to this conclusion for the following reasons: (1) With regard to the proposed amendments relating to the 2006 Subbarao Study ("Subbarao Study"), by at least April 2021, the Defendants had in their possession various documents that plausibly demonstrated that the named inventors -- Drs. Heneine, Garcia-Lerma, Otten, Janssen and Folks -- had previously been made aware that: (a) the monkeys used in the Subbarao Study had not eaten all of the peanut butter with tenofovir disoproxil fumarate ("TDF") in it during the course of the study and (b) this was an alleged flaw that could have affected the study's outcome. (D.I. 298 at 3 & exs. 5-6, 7-9; D.I. 296 at 3) In their reply brief, Defendants, citing to certain deposition transcripts, respond by suggesting that only at the inventors' January 2022 depositions (which occurred late in the case, due in part to Plaintiff's delays in document production) did Defendants confirm that the inventors had actually been aware of these dosing failures. But the cited deposition transcripts, (D.I. 299 at ex. Q at 29-34, 157-58), relate only to the deposition of one of the inventors (Dr. Otten). And in those pages, Dr. Otten is being asked about information found in the 2006 Subbarao Study itself, (D.I. 298, ex. 5), or in a 2006 critique of the study by Drs. Robert Grant and Mark Wainberg, (id., ex. 6) -- documents that Defendants have had since 2019 and that the inventors would have known about for years before that. (D.I. 298 at 3) While it no doubt bolstered the defense a bit to have an inventor confirming in his deposition that these dosing issues existed and that he was aware of them, in the Court's view, Defendants could have plausibly made the same allegations regarding knowledge/specific intent as of April 2021 (months prior to the deadline for amendments) with the evidence that they had at that time. See Chemours Co. FC, LLC v. Daikin Indus., Ltd., C.A. No. 17-1612 (MN) (CJB), 2022 WL 855518, at *2-3 (D. Del. Mar. 23 2022) (adopting Report and Recommendation); see also Carrier Corp. v. Goodman Glob., Inc., 49 F. Supp. 3d 430, 433 (D. Del. 2014). Inequitable conduct allegations are serious to be sure, and a party should only file them when they have enough evidence to support a plausible claim/defense. But if a party does have such evidence, then it cannot simply sit on its hands and wait to file that claim/defense for months and months (until long after the amendment deadline has passed) on the premise that future depositions will nevertheless help it to "confirm" the truth of those allegations. If such a plan was countenanced, then in almost any case where inequitable conduct is to be alleged, this type of super-late amendment would happen -- and that in turn would wreak havoc on patent case scheduling.; (2) With regard to the proposed amendments relating to Mayer 2006, as of April 2021 Defendants were aware of: (a) Dr. Heneine's knowledge of the Mayer 2006 abstract; and (b) the fact that Dr. Heneine did not disclose that art to the U.S. Patent & Trademark Office ("PTO"). (D.I. 298 at 2 & exs. 1-2) Defendants assert,

however, that only after Dr. Heneine's January 2022 deposition did they confirm for sure that Dr. Heneine made a deliberate decision not to disclose the reference. (D.I. 299 at 1 (citing D.I. 296 at ex. K at 213-14)) But again, the question here is simply whether Defendants could have made out a plausible allegation of Dr. Heneine's specific intent to deceive before the pleading deadline. They could have. There is no requirement that in order to make a plausible assertion that an inventor made a deliberate decision not to submit a reference, the pleading party has to first depose the inventor and get him to admit that, in fact, he made such a deliberate decision. Indeed, even in their proposed amended pleading, (D.I. 295, ex. 1), Defendants do not explicitly cite to Dr. Heneine's deposition testimony in order to establish this point.; and (3) With regard to the proposed amendments relating to the September 2005 CDC PEP Guidelines, Defendants have been aware of the those guidelines and Dr. Heneine's authorship thereof -- as well Dr. Heneine's failure to disclose the guidelines to the PTO -- since at least April 2021. (D.I. 298 at 2 & exs. 2-3) While again, it may be that Dr. Heneine's January 2022 deposition was the first time that he "confirmed" that he intentionally did not disclose this reference to the PTO, (see D.I. 296, ex. K at 213-14), for the same reasons as discussed above as to the Mayer 2006 reference, Defendants could have made a plausible allegation of Dr. Heneine's knowledge and specific intent prior to the deadline for amending pleadings. Ordered by Judge Christopher J. Burke on 3/30/2022. (mlc) (Entered: 03/30/2022)

As of March 31, 2022, PACER did not contain a publicly available document associated with this docket entry. The text of the docket entry is shown above.

*United States of America v. Gilead Sciences, Inc. et al*
1-19-cv-02103 (DDE), 3/30/2022, docket entry 307